Elaine T. Byszewski (SBN 222304)
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Tel. (213) 330-7150
Fax (213) 330-7152
Elaine@hbsslaw.com

Michael Dell'Angelo
Shanon J. Carson
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net
scarson@bm.net
sschalman-bergen@bm.net

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS KURASH, KAYE KURASH, MARY D'ANGELO, AYMAN MOUSA, JOHN CHAPMAN, MARCELL CHAPMAN, GEORGE RUDY, and HOLLY AMROMIN,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, and KIA MOTORS AMERICA, INC.,<br><br>Defendants. | Civil Action No. SACV12 2164 (JC)(MLGx)<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

# CLASS ACTION COMPLAINT

Plaintiffs Douglas Kurash, Kaye Kurash, Mary D'Angelo, Ayman Mousa, John Chapman, Marcell Chapman, George Rudy, and Holly Amromin ("Plaintiffs"), individually and on behalf of a Class of all those similarly situated, file this Complaint against Defendants Hyundai Motor America and Kia Motors America, Inc. (collectively, "Defendants"), and allege, based on personal knowledge as to themselves and on information and belief and investigation of counsel as to all other allegations, as follows:

## I. NATURE OF THE CASE

1. This is a class action brought to seek redress on behalf of all persons and entities who bought or own a model year 2011 through 2013 Hyundai or Kia automobile subject to the EPA fuel economy (MPG) estimate relabel by Hyundai or Kia ("Affected Hyundai Models" and "Affected Kia Models", collectively the "Affected Models")[1] at any time until October 31, 2012 (the "Class Period").

2. As a result of an EPA investigation of test data, Defendants admitted that their EPA fuel economy (MPG) ratings were inflated and inaccurate, overstating the EPA fuel economy ratings for approximately 900,000, or 35 percent of their 2011 through 2013 model year vehicles.

3. The fuel economy ratings are mandated by federal law, and were created to help car buyers make more informed decisions when considering a vehicle's fuel economy. Specifically, federal regulations ensure that the fuel economy ratings advertised to consumers are measured using a "common yardstick" – the same test run under the exact same set of conditions, making the fuel economy ratings a fair comparison from vehicle-to-vehicle.

4. Defendants failed to follow the appropriate protocols set forth by the EPA in determining the EPA estimate ratings for their vehicles, and their noncompliance permitted them to

---

[1] The "Affected Hyundai Models" include: the 2013 Accent, Azera, Elantra, Genesis, Santa Fe, Tucson, and Veloster; the 2012 Accent, Azera, Elantra, Genesis, Sonata, Tucson, and Veloster; and the 2011 Elantra and Sonata. The "Affected Kia Models" include: the 2013 Rio, Sorento, Soul, and Sportage; the 2012 Optima, Rio, Sorento, Soul and Sportage; and the 2011 Optima.

- 1 -

CLASS ACTION COMPLAINT

advertise overstated fuel efficiency numbers to consumers. Defendants' stated EPA fuel economy ratings in advertisements and on window stickers were false.

5. Defendants' overstated EPA fuel economy ratings also permitted them to set prices for the Affected Models at levels higher than their competitors, and higher than the actual value of the Affected Models.

6. While Defendants have established reimbursement programs that purport to pay for the differences in fuel costs between the original and recalculated EPA fuel economy ratings, these programs fail to adequately compensate Plaintiffs for the inequitable bargain they received by virtue of purchasing an Affected Model with an overstated EPA fuel economy estimate.

7. Plaintiffs each purchased or leased an Affected Model vehicle whose EPA fuel economy ratings and advertised fuel efficiency numbers were inaccurate and higher than they would have been if proper test procedures were followed.

8. Defendants' inaccurate EPA fuel economy ratings formed a material element of the price of the Affected Models bought by Plaintiffs. The Affected Models are, in fact, of a different and lesser quality than that represented by Defendants.

9. Had Plaintiffs known that the EPA fuel economy ratings were inaccurate and misstated, they would not have purchased or leased the Affected Models, or would not have purchased or leased the Affected Models for the agreed upon price.

10. Defendants knew or should have known that their EPA fuel economy ratings were inaccurate and misstated through standard internal testing and investigation. Instead, Defendants consciously or recklessly disregarded facts that indicated the EPA fuel economy rates were inaccurate and misstated.

11. Defendants enjoyed the benefit of increased financial gain as a result of their inaccurate and overstated EPA fuel economy ratings.

12. Plaintiffs, on behalf of themselves and those similarly situated, seek relief for injuries sustained as the result of inaccurate testing methods used by Hyundai and Kia to determine the fuel

economy ratings of the Affected Models and material misstatements regarding those ratings. Plaintiffs seek injunctive, equitable and monetary relief for damages incurred as a result of Defendants' conduct.

## II. PARTIES

**Plaintiffs**

13. Plaintiffs Douglas Kurash and Kaye Kurash (the "Kurash Plaintiffs") purchased, and are the owners of a 2013 Hyundai Veloster and are residents and citizens of Charles City, Iowa. Before the vehicle was purchased, the Kurash Plaintiffs viewed the EPA fuel economy ratings, and these ratings influenced their decision to purchase the vehicle. Had the Kurash Plaintiffs known that the EPA fuel economy ratings were overstated, they would not have purchased this vehicle and/or would not have paid the same price for the vehicle.

14. Plaintiff Mary D'Angelo leased a 2013 Hyundai Elantra and is a resident and citizen of Riverhead, New York. Before the vehicle was leased, Plaintiff D'Angelo viewed the EPA fuel economy ratings, and these ratings influenced her decision to lease the vehicle. Had Plaintiff D'Angelo known that the EPA fuel economy ratings were overstated, she would not have leased this vehicle and/or would not have paid the same for the lease of the vehicle.

15. Plaintiff Ayman Mousa purchased two 2012 Kia Optimas, and is a resident and citizen of Ladera Ranch, California. Before the vehicles were purchased, Plaintiff Mousa viewed the EPA fuel economy ratings, and these ratings influenced his decision to purchase the vehicles. Had Plaintiff Mousa known that the EPA fuel economy ratings were overstated, he would not have purchased these vehicles and/or would not have paid the same prices for the vehicles.

16. Plaintiffs John Chapman and Marcell Chapman (the "Chapman Plaintiffs") purchased, and are the owners of a 2013 Kia Soul and are residents and citizens of Lemoore, California. Before the vehicle was purchased, the Chapman Plaintiffs viewed the EPA fuel economy ratings, and these ratings influenced their decision to purchase the vehicle. Had the Chapman Plaintiffs known that the EPA fuel economy ratings were overstated, they would not have purchased this vehicle and/or would not have paid the same price for the vehicle.

17. Plaintiff George Rudy purchased, and is the owner of a 2013 Kia Soul, and is a resident and citizen of North Royalton, Ohio. Before the vehicle was purchased, Plaintiff Rudy viewed the EPA fuel economy ratings, and these ratings influenced his decision to purchase the vehicle. Had Plaintiff Rudy known that the EPA fuel economy ratings were overstated, he would not have purchased this vehicle and/or would not have paid the same price for the vehicle.

18. Plaintiff Holly Amromin purchased, and is the owner of a 2012 Kia Soul, and is a resident and citizen of Sterling Heights, Michigan. Before the vehicle was purchased, Plaintiff Amromin viewed the EPA fuel economy ratings, and these ratings influenced her decision to purchase the vehicle. Had Plaintiff Amromin known that the EPA fuel economy ratings were overstated, she would not have purchased this vehicle and/or would not have paid the same price for the vehicle.

**Defendants**

19. Defendant Hyundai Motor America ("Hyundai") is a corporation which is incorporated in the state of California, and is a citizen of and has its principal place of business in the city of Fountain Valley, California. Hyundai is a wholly owned subsidiary of Hyundai Motor Company. Hyundai markets and distributes automobiles from its California headquarters. Hyundai distributes its vehicles to dealerships across the United States, including the dealerships where Plaintiffs and other Class members purchased or leased their vehicles.

20. Defendant Kia Motors America ("Kia") is a corporation which is incorporated in the state of California, and is a citizen of and has its principal place of business in the city of Irvine, California. Kia is a subsidiary of Kia Motors Corporation. Kia distributes its vehicles to dealerships across the United States, including the dealerships where Plaintiffs and other Class members purchased or leased their vehicles.

### III.  JURISDICTION AND VENUE

21. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiffs and other Class Members are citizens of a different state than Defendants.

CLASS ACTION COMPLAINT

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) & (d). At all times relevant to the Complaint: (a) Defendants transacted business, were found, or acted through subsidiaries or agents present in this District; (b) a substantial part of the events at issue occurred in this District; and (c) a substantial portion of the affected interstate trade and commerce described below has been carried out in this District. Specifically, Hyundai Motor America has its headquarters in Fountain Valley, California, and Kia Motors America, Inc. maintains its headquarters in Irvine, California.

23. This Court has personal jurisdiction over each defendant. Each defendant, *inter alia*: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered Affected Models throughout the United States, including this District; (c) had substantial contacts with the United States, including this District; and/or (d) engaged in conduct that was directed at and had a direct, foreseeable and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District.

## IV. FACTUAL ALLEGATIONS

### A. The Federal Government Mandates Specific Fuel Economy Tests That Must Be Conducted Under Controlled, Repeatable Conditions

24. Federal law requires auto manufacturers to attach, in a prominent place on all new automobiles labels that disclose, among other things, the fuel economy of the automobile and estimated annual fuel costs. 49 U.S.C. § 32908(b).

25. While the EPA fuel economy ratings have appeared on the window stickers of all cars and light trucks since the late 1970's, the U.S. Environmental Protection Agency ("EPA") promulgated a rule revising the methods used to calculate the fuel economy ratings in 2006, effective beginning with 2008 model-year vehicles.

26. The EPA's final rule was intended to help car buyers make more informed decisions when considering a vehicle's fuel economy. According to the EPA, "Consumers need to be provided

- 5 -

with accurate, easily understandable, and relevant information regarding the fuel economy of new vehicles." *See* 71 Fed. Reg. 77,872 (Dec. 27, 2006).

27. The EPA's rule prescribed standardized test procedures to measure fuel economy under controlled, repeatable conditions in a laboratory.

28. The standardized test must be run under an identical range of conditions and under a precise driver's trace, in order to assure that the result will be the same for an individual vehicle model no matter when and where the laboratory test is performed. The repeatable test provides "a level playing field for all vehicles, which is essential for comparing the fuel economy of one vehicle to another." *See* 71 Fed. Reg. 77,872 (Dec. 27, 2006). "In other words, when consumers are shopping for a car, they can be sure that the fuel economy ratings were measured using a 'common yardstick' – that is the same test run under the exact same set of conditions, making the fuel economy ratings a fair comparison from vehicle-to-vehicle." *Id.*

29. Manufacturers test their own vehicles, and report the results to the EPA. EPA reviews the results and confirms about 10-15 percent of them through their own tests at the National Vehicles and Fuel Emissions Laboratory.

**B. Consumer Complaints Prompted the EPA Investigation of Affected Model Fuel Economy Ratings**

30. In response to consumer complaints, on or around November 30, 2011, the consumer group Consumer Watchdog sent a letter to the EPA expressing concerns about the fuel economy MPG ratings advertised on the EPA window sticker of the Hyundai Elantra, and requesting that the EPA re-test the Elantra.

31. In addition, consumers complained to the National Highway Traffic Safety Administration's Office of Defects Administration ("ODI") that the fuel economy ratings were erroneous and overstated.

- 6 -

CLASS ACTION COMPLAINT

32. An owner of a 2012 Hyundai Elantra complained to ODI that he or she "bought this particular vehicle due to the fact it advertised 40 MI. Gal on Highway and 29 City," but the car never achieved that mileage.[2]

33. An owner of a 2012 Kia Sorento complained to ODI that "FOR A VEHICLE WITH AN EPA MILES-PER-GALLON RATING OF 21 CITY/28 HIGHWAY/23 COMBINED, I HAVE NEVER ONCE ACHIEVED TRUE CALCULATED FUEL ECONOMY OF OVER 20 MPG SINCE OWNING THIS VEHICLE."

### C. EPA Testing Reveals That Defendants Inflated And Overstated EPA Fuel Economy Ratings For The Affected Models

34. In response to numerous complaints by consumers, EPA undertook an investigation of Hyundai and Kia vehicles.

35. EPA's independent testing resulted in coastdown[3] values different than those reported by Hyundai or Kia. The discrepancy was a result of what Defendants call "procedural errors" at their joint testing operations in Korea that relate to how Defendants' testing engineers identified vehicle weight and chose test runs for calculation of the coastdown values. The methods implemented by Defendants to test fuel economy were insufficient in design, procedure, content, execution, and/or completeness, and resulted in fuel economy ratings that were inaccurate and overstated.

36. On November 2, 2012, in a release titled "EPA Investigation Prompts Carmaker to Correct Inflated Mileage Claims," the EPA announced that Hyundai and Kia would lower their fuel economy (MPG) ratings for the majority of their model year 2012 and 2013 vehicle models as a result of an EPA investigation of test data.

37. With these changes, the 2012 Hyundai/Kia fleet fuel economy level was reduced by an average of 3 percent.

---

[2] Complaints are available from NHTSA's ODI database at http://www-odi.nhtsa.dot.gov/complaints.
[3] Coastdown testing simulates aerodynamic drag, tire rolling resistance and drivetrain frictional losses and provides the technical data used to program the test dynamometers that generate EPA fuel economy ratings.

CLASS ACTION COMPLAINT

38. According to the EPA announcement, "EPA's audit testing occasionally uncovers individual vehicles whose label values are incorrect and requires that the manufacturer re-label the vehicle. This has happened twice since 2000. This is the first time where a large number of vehicles from the same manufacturer have deviated so significantly."

39. Defendants knew or should have known that their testing methodology was flawed and was contrary to the standards promulgated by the EPA, as their stated fuel economy ratings were uniformly inaccurate across a large segment of vehicles and model years.

**D.     Hyundai and Kia Benefitted from Their Inaccurate and Overstated Fuel Economy Ratings**

40. With fuel prices at near-record levels, consumers are prioritizing fuel economy more than ever when choosing between cars. A May 2012 survey conducted by Consumer Reports National Research Center found that 37 percent of consumers surveyed reported that their leading consideration when shopping for their next car will be fuel economy. A distant second was quality (17 percent) followed by safety (16 percent), value (14 percent) and performance (6 percent). Some two-thirds of owners surveyed said that they expected their next vehicle to get better fuel mileage than the one they're driving now.

41. Defendants have consistently promoted the fuel economy of their vehicles as a selling point. Defendants refer extensively to their vehicles' MPG ratings in their advertising to consumers as part of their marketing campaigns.

42. Defendants' sales of Affected Models were higher than they would have been if Defendants had not reported inaccurate and overstated fuel economy ratings to the EPA.

43. The inaccurate and overstated fuel economy ratings also caused Defendants to overprice their vehicles.

44. Car manufacturers are able to set prices higher for cars that report higher fuel economy ratings. For example, a 2008 research study conducted by the Economic Analysis Group of the

CLASS ACTION COMPLAINT

Antitrust Division of the U.S. Department of Justice concluded that automobile manufacturers set prices as if consumers value low fuel costs.[4] Based on information and belief, Defendants were able to and did set prices higher for the Affected Models than they otherwise would have, absent their inaccurate and overstated fuel economy ratings.

45. By overstating their EPA fuel economy ratings, Defendants were able to charge and did charge higher prices for their vehicles, and received substantial benefits from these higher prices, to the great detriment of consumers.

46. Plaintiffs and Class Members uniformly paid more than they would have paid to buy or lease their Affected Model vehicle as a result of Defendants' misconduct.

47. Although Defendants have established reimbursement programs that purport to make up for the differences in fuel costs between the original and recalculated ratings, these reimbursement programs are insufficient to compensate Plaintiffs and Class Members for the harm incurred as a result of Defendants' misconduct. Specifically, the reimbursement program sets up obstacles designed to diminish the damages paid to the Class through unnecessary hurdles. In addition, the reimbursement program fails to compensate Plaintiffs and Class Members for the lowered value of the Affected Models as a result of Defendants' inaccurate and overstated fuel economy ratings.

48. At all times, Hyundai and Kia possessed vastly superior information to that of consumers about the inaccurate results of their fuel economy testing.

## V.   CLASS ACTION ALLEGATIONS

49. This action has been brought and may be properly maintained as a nationwide class action pursuant to Fed. R. Civ. P. 23, on behalf of a Class defined as follows:

> all persons and entities who bought, own, or have leased a model year 2011 through 2013 Hyundai or Kia automobile subject to the EPA fuel economy (MPG) estimate

---

[4] *See* Ashley Langer and Nathan Miller, "Automobile Prices, Gasoline Prices, and Consumer Demand for Fuel Economy," EAG 08-11 (Dec. 2008), available at http://www.justice.gov/atr/public/eag/240080a.html.

CLASS ACTION COMPLAINT

relabel by Hyundai or Kia ("Affected Hyundai Models" and "Affected Kia Models", collectively the "Affected Models").[5] Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers or their immediate family members and associated court staff assigned to this case.

50. Alternatively, or in addition to the nationwide Class claims, Plaintiffs bring their unjust enrichment claims under Fed. R. Civ. P. 23 on behalf of themselves and on behalf of Subclasses of individuals and entities residing in each of the states in which a named Plaintiff resides ("State Subclasses"). The State Subclasses are defined as:

> all persons and entities in the applicable State who bought, own, or have leased a model year 2011 through 2013 Hyundai or Kia automobile subject to the EPA fuel economy (MPG) estimate relabel by Hyundai or Kia ("Affected Hyundai Models" and "Affected Kia Models", collectively the "Affected Models").[6]

Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers or their immediate family members and associated court staff assigned to this case.

51. Plaintiffs reserve the right to re-define the Class(es) prior to class certification, and thereafter, as necessary.

52. Members of the Classes are so numerous that their individual joinder is impracticable. While the precise number is unknown at this time, upon information and belief, the proposed Classes

---

[5] The "Affected Hyundai Models" include: the 2013 Accent, Azera, Elantra, Genesis, Santa Fe, Tucson, and Veloster; the 2012 Accent, Azera, Elantra, Genesis, Sonata, Tucson, and Veloster; and the 2011 Elantra and Sonata. The "Affected Kia Models" include: the 2013 Rio, Sorento, Soul, and Sportage; the 2012 Optima, Rio, Sorento, Soul and Sportage; and the 2011 Optima.

[6] The "Affected Hyundai Models" include: the 2013 Accent, Azera, Elantra, Genesis, Santa Fe, Tucson, and Veloster; the 2012 Accent, Azera, Elantra, Genesis, Sonata, Tucson, and Veloster; and the 2011 Elantra and Sonata. The "Affected Kia Models" include: the 2013 Rio, Sorento, Soul, and Sportage; the 2012 Optima, Rio, Sorento, Soul and Sportage; and the 2011 Optima.

- 10 -

CLASS ACTION COMPLAINT

are comprised of thousands of members. Plaintiffs are informed and believe that at least 900,000 Affected Models were sold by Defendants. Accordingly the Classes consist of hundreds of thousands of individuals nationwide, making individual joinder of all Class Members impracticable. The true number of class members is likely to be known by Defendants and may be ascertained through their books and records.

53. There are numerous questions of law and fact common to Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual Class members, including but not limited to:

    a. Whether an Affected Model received proper testing for its fuel economy rating;

    b. Whether an Affected Model's stated EPA fuel economy rating was inaccurate;

    c. Whether Defendants knew or should have known that the EPA fuel economy ratings were inaccurate;

    d. Whether failure to accurately state EPA fuel economy ratings constitutes an unlawful business practice or act;

    e. Whether the value of the Affected Models decreased as a result of the inaccurate and misstated EPA fuel economy ratings;

    f. Whether Defendants were unjustly enriched by their misconduct;

    g. Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiffs and members of the Class; and

    h. Whether Plaintiffs and members of the Classes are entitled to equitable or injunctive relief, and if so, the proper measure of such relief.

54. Plaintiffs' claims are typical of the claims of the members of the Class, in that Plaintiffs, like all Class members, bought, owned or leased Affected Models.

55. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting nationwide multi-state consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse or antagonistic to those of the Classes.

56. Plaintiffs and the members of the Classes have all suffered and will continue to suffer harm and damages as a result of the Defendants' conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the vast majority of Class members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendants and be made whole. Class treatment of predominating common questions of law and fact would also be superior to multiple individual actions, in that class treatment would conserve the resources of the courts and the litigants, and will further efficient adjudication of Class member claims.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

57. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

58. California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Defendants have engaged in unlawful, fraudulent, and unfair business acts or practices in violation of the UCL.

59. Defendants have violated the unlawful prong because they failed to comply with the testing methods required by the EPA. 71 Fed. Reg. 77,872-01 (Dec. 27, 2006); 40 C.F.R. §§ 86, 600, 1037, 1066 (2011). Defendants' fuel economy rating discrepancies resulted from procedural errors in testing, and as a result, produced inaccurate fuel economy ratings requiring an average of a three percent downward adjustment for all Affected Models.

60. Defendants violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the MPG of their vehicles as set forth were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

61. Defendants have violated the unfair prong of section 17200 because the acts and practices set forth offend established public policy and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs from making fully

- 12 -

CLASS ACTION COMPLAINT

informed decisions about whether to purchase or lease their vehicles and/or the price to be paid to purchase or lease them. Defendants' conduct also offends established public policy as delineated in the regulatory provisions described above and their underlying purposes.

62. The Named Plaintiffs have suffered injury in fact, including losing money or property, as a result of Defendants' unfair, unlawful and/or deceptive practices. In purchasing or leasing their vehicle, Plaintiffs relied on the misrepresentations and/or omissions of Defendants regarding the EPA fuel efficiency ratings. Had Plaintiffs known that the EPA fuel efficiency ratings were misstated and inaccurate, they would not have purchased or leased their vehicles and/or paid as much for them. Plaintiffs have already paid, and will be required to pay in the future, fuel costs over what they would have paid if Defendants had accurately disclosed their vehicles' fuel economy.

63. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern of generalized conduct, both in California and nationwide.

64. Plaintiffs request this Court enter an order or judgment to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Classes any money Defendants acquired by unfair competition, as provided for in Cal. Bus. & Prof. Code § 17203, and for such other relief set forth below.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT

65. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

66. Substantial benefits have been conferred on Defendants by Plaintiffs and the Class, who purchased or leased the Affected Models at prices higher than their true value.

67. These benefits were obtained as a result of Defendants' EPA fuel efficiency ratings, which Defendants knew or should have known were inaccurate and overstated.

68. Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members. It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

69. Plaintiffs therefore seek an order requiring Defendants to make restitution to them and other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs individually and on behalf of all others similarly situated, respectfully request this Court enter a judgment against Defendants and in favor of Plaintiffs, and grant the following relief:

    A.    Enter an Order certifying the proposed Classes (and subclasses, if applicable), appointing Plaintiffs as Class Representative;

    B.    Declare, adjudge and decree the conduct of the Defendants as alleged herein to be unlawful, unfair and/or deceptive;

    C.    Award Plaintiffs and Class members actual, compensatory damages, including all economic losses sustained, for past and future amounts, resulting from Defendants' overstated fuel efficiency ratings;

    D.    Award Plaintiffs restitution of all monies paid to Defendants as a result of unlawful, deceptive, and unfair business practices;

    E.    Award Plaintiffs and the Class members reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

    F.    Award such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs, on behalf of themselves and the members of the Classes hereby demand trial by jury on all issues so triable.

DATED: December 13, 2012

Respectfully submitted,

Elaine T. Byszewski (SBN 222304)
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Tel. (213) 330-7150
Fax (213) 330-7152
Elaine@hbsslaw.com

Michael Dell'Angelo
Shanon J. Carson
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net
scarson@bm.net
sschalman-bergen@bm.net

***Counsel for Plaintiffs and the Proposed Classes***

CLASS ACTION COMPLAINT